UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

OLGA ANDREU MEGWINOFF,
Plaintiff,

v.                                                                                          Civil No. 98-1995 (HL)

BANCO BILBAO VIZCAYA, et al.,
Defendants.

**OPINION AND ORDER**

This matter comes before the Court as a result of the termination of the employment relationship between Plaintiff Olga Andreu Megwinoff ("Andreu") and Defendant Banco Bilbao Vizcaya ("BBV"). In her amended complaint, Dkt. No. 24, Andreu alleges that her several transfers and her eventual termination were the result of age discrimination, disability discrimination, and retaliation for having complained of being sexually harassed. Accordingly, Andreu brings suit under the Age Discrimination in Employment Act, 29 U.S.C.A. § 621 et seq. (West 1999) ("ADEA"); the Americans with Disabilities Act, 42 U.S.C.A. § 12101 et seq. (West 1995) ("ADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. (West 1994) ("Title VII"). Andreu further alleges violations of the Consolidated Omnibus Reconciliation Act of 1985, 29 U.S.C.A. § 1161 et seq. (West 1999) ("COBRA") and the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 et seq. (West 1999) ("ERISA"). Andreu invokes the Court's supplemental jurisdiction over several local law claims, including P.R. LAWS ANN. tit. 29, § 146 (1995) ("Law 100"); P.R. LAWS ANN. tit. 1, § 501 (1982) ("Law 44"); P.R. LAWS ANN. tit. 29, § 1321 (1995) ("Law 69"); P.R. LAWS ANN. tit. 11, § 201 et seq.



(1997) ("Law 139"). BBV has filed a Motion for Summary Judgment, Dkt. No. 37, a Reply Brief, Dkt. No. 46, a Motion to Strike, Dkt. No. 47, a Motion to Strike Exhibits, Dkt. No. 49, and a Third Motion to Strike Exhibits, Dkt. No. 53. Andreu has filed an Opposition to Motion for Summary Judgment, Dkt. No. 39, and an Opposition to Motion to Strike, Dkt. No. 52.

## Standard for Summary Judgment

The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine," the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Crawford-El*, 118 S.Ct. 1584, 1598 n. 22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Civil No. 98-1995 (HL)                              3

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R. Civ. P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Of course, the Court draws inferences and evaluates facts "in the light most favorable to the nonmoving party." *Leary*, 58 F.3d at 751 (1995). Still, even in discrimination cases, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the discrimination claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

### Statement of Facts

Plaintiff Andreu is a former employee of Defendant BBV. Andreu began working for BBV on June 15, 1992 under a three-month employment contract. While serving out this period and a second three-month contractual period, Andreu was sexually harassed by her supervisor, Jose Luis Castellanos ("Castellanos"). At the end of the second three-month period, Andreu's contract was not renewed under orders from Castellanos.

Far from being denied a renewal of her contract, Castellanos had expected to sign a permanent employment contract with BBV. In response, Andreu met with Juan Net

Civil No. 98-1995 (HL)                                4

("Net"), President of BBV, and explained to him that she had been dismissed by the supervisor that had been sexually harassing her. Accordingly, Net had a meeting with Castellanos after which Net informed Andreu that she would be offered permanent employment at BBV.

Soon after these events, Andreu's superiors coaxed her to sign a document purporting to release BBV from liability for any claims of sexual harassment that Andreu might bring because of Castellanos' behavior. After signing the document, a series of events began that became the impetus for this lawsuit. In short, Andreu felt that she was the object of hostility from her superiors and that they wished to force her to quit her job. Further, she was transferred on several occasions to different BBV locations. Andreu considered these transfers to be demotions. Eventually, Andreu developed a breathing disorder which required her to take an extended hiatus from her duties at work, beginning on September 24, 1996. While out of work, Andreu was also diagnosed with breast cancer. After over 360 days away from work, BBV terminated Andreu on November 18, 1997.

Andreu contends that the ill will, transfers, and eventual termination to which she was subjected were in retaliation for her report of sexual harassment. She further avers that after each transfer, she was replaced by a younger employee because of BBV's policy of age discrimination. Finally, Andreu asserts that she was the victim of disability discrimination because of a breathing disorder that she developed while working for BBV.

**Discussion**

Civil No. 98-1995 (HL)                                      5

Before reaching the merits of Andreu's claims, the Court shall proceed to the procedural arguments made in BBV's Motion for Summary Judgment, Dkt. No. 37. In its motion, BBV argues that Andreu's claims are time-barred because Andreu failed to file a claim with the EEOC within 300 days of the discriminatory acts that she alleges. Under Title VII, the ADA, and the ADEA, a plaintiff in a deferral state like Puerto Rico must file an administrative charge with the EEOC within 300 days of the alleged discriminatory acts at issue. See 42 U.S.C.A. § 2000e-5(e)(1) (West 1994) (Title VII's charge-filing requirement); *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 (1st Cir. 1999) (stating that Title VII's charge-filing requirement applies to the ADA); 29 U.S.C.A. § 626(d)(2) (ADEA's charge-filing requirement); *Rosas Cardona v. Aramark Services of Puerto Rico, Inc.*, 9 F.Supp.2d 92, 97 (D.P.R. 1998) (noting that Puerto Rico is a deferral state).

On December 5, 1997, Andreu filed her charge of discrimination with the EEOC. BBV argues that, counting backward 300 days from that date, any discriminatory acts that occurred before February 8, 1997 are time-barred. Thus, only Andreu's actual termination on November 18, 1997 occurred within the 300 days before Andreu's filing with the EEOC. Accordingly, none of the discriminatory acts that occurred before February 8, 1997 are actionable.

Andreu responds with two separate arguments. First, she asserts that "as soon as she knew that the discrimination that permeated the BBV hierarchy had effected [sic] her, she filed a [charge]." Dkt. No. 39. Second, she classifies only her age discrimination

Civil No. 98-1995 (HL) 6

claim as a "systemic continuing violation." *Id.* These two arguments might better be characterized as based on the theories of continuing serial violation for her retaliation and disability discrimination claims and continuing systemic violation for her age discrimination claim. For Andreu successfully to thwart BBV's time-bar defense via the theory of continuing serial violation, she must satisfy the doctrinal requirements of the theory. A continuing serial violation "occurs where a chain of similar discriminatory acts emanating from the discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims." *Provencher v. CVS Pharmacy*, 145 F.3d 5, 14 (1st Cir. 1998). See also, *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 53-54 (1st Cir. 1999). In this case, Andreu contends that the various transfers that she endured constitute the otherwise time-barred discriminatory acts, while her termination serves as the "anchor" for those acts. Andreu's termination did indeed occur within the limitations period. This, however, is not enough to constitute a continuing serial violation. Andreu faces two insurmountable hurdles in her effort to make out a continuing serial violation. First, "[e]ven where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." *Provencher*, 145 F.3d at 14. Second, the anchoring act must actually have been a *discriminatory* act. *Id.*

Andreu finds the first hurdle in her path because she admitted in her depositions that she believed her various transfers to be the result of either retaliation, discrimination, or

Civil No. 98-1995 (HL)                                              7

both. As a result, she was aware that she was the victim of discrimination at the time of the transfers.[1] This destroys Andreu's claim of a continuing serial violation. The justification for this rule is that "a knowing plaintiff has an obligation to file promptly or lose his claim: '[t]his can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern." *Provencher*, 145 F.3d at 15 (quoting *Sabree v. United Bhd. of Carpenters and Joiners Local No. 33*, 921 F.2d 396, 401-02). Thus, Andreu can not rely on the theory of continuing serial violation to save her claims from being time-barred.

Further inhibiting Andreu's ability to rely on the theory of continuing serial violation is the requirement that BBV commit a discriminatory act during the limitations period. The only timely act that Andreu alleges to be discriminatory is her termination. The problem with Andreu's reliance on her termination as the anchor for her claim is that she has failed to present any evidence that her termination was the result of discriminatory intent. Because Andreu has no direct evidence of retaliation or disability discrimination, she must use circumstantial evidence to make her case. *Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1st Cir. 1998). Thus, she must resort to the *McDonnell Douglas* burden-shifting framework to present her circumstantial evidence. *Laurin*, 150 F.3d at 58.

Even assuming that Andreu could make out a prima facie case of retaliation or

---

[1] It should be noted that Andreu is not a layperson but rather an attorney.

Civil No. 98-1995 (HL) 8

disability discrimination, BBV offers a legitimate, non-discriminatory reason for her termination. See *Id.* See also, *Clean Harbors Environmental Services, Inc. v. Herman*, 146 F.3d 12, 21 (1st Cir. 1998) (stating that the *McDonnell Douglas* burden-shifting framework applies to retaliation claims). According to BBV, Andreu was terminated because she missed more than 360 days of work, the maximum amount allowed under the company's Short Term Non-Occupational Disability Insurance Plan. Andreu must then show that this reason was merely a pretext for discrimination. *Laurin*, 150 F.3d at 58. She must present proof "that enables a fact-finder rationally to conclude that the stated reason behind the adverse employment decision is not only a sham, but a sham intended to cover up the proscribed type of discrimination." *Id.* Andreu has presented no such proof. Thus, Andreu has failed to create a genuine issue of material fact as to the existence of a discriminatory act within the limitations period. With no such act, there is no evidence of discrimination at all, much less sufficient evidence to anchor Andreu's claim of continuing serial violation. As a result, Andreu can not use her termination alone as the basis for her lawsuit, nor can she use her termination in combination with her transfers. Andreu's retaliation and disability discrimination claims are thus time-barred.

To prevent the demise of her retaliation and disability discrimination claims, Andreu argues that settlement negotiations between her attorney and counsel for BBV tolled the statute of limitations. This argument is unavailing. Such extrajudicial communications toll limitations periods under Puerto Rico law, but not under the applicable federal law. Where, as here, a relevant federal law provides the applicable

statute of limitations, state or local law on tolling is inapplicable. *See Chico-Velez v. Roche Products, Inc.*, 139 F.3d 56, 58-59 n.3 (1st Cir. 1998); *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 665-66 (8th Cir. 1995), *cert. denied*, 516 U.S. 944 (1995); *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 665 (9th Cir. 1980). Thus, the Court may not consider Puerto Rico law in determining whether Andreu is entitled to tolling of the time for filing her claim. Offers of settlement will not normally be sufficient to justify the equitable modification of a filing deadline. *See Mercado-Garcia v. Ponce Federal Bank*, 979 F.2d 890, 895 (1st Cir. 1992) (stating that defendant's offer to settle case was insufficient reason for plaintiff to miss the filing deadline).

As for Andreu's claim of discrimination on the basis of age, Andreu relies on a related but different theory to rebut BBV's time-bar argument: continuing systemic violation. A continuing systemic violation is based not on a series of discriminatory acts but rather on "a discriminatory policy or practice." *Provencher*, 145 F.3d at 14 (quoting *Jensen v. Frank*, 912 F.2d 517, 523 (1st Cir. 1990)). Further, "so long as the policy or practice itself continues into the limitation[s] period, a challenger may be deemed to have filed a timely complaint." *Id.* Unlike a continuing serial violation, a continuing systemic violation "requires no identifiable act of discrimination during the limitations period." *Provencher*, 145 F.3d at 14.

In the case of Andreu's claim of age discrimination, she properly alleges the existence of a policy of discrimination on the basis of age. Further, Andreu supports her allegations in her Statement of Contested Material Facts, Dkt. No. 39. In items 29 through

33, Andreu sets forth the facts that support her allegation. She avers,

> 29. BBV discriminated against Ms. Andreu based on her age.
> 30. BBV instituted a policy of lowering the age of its workforce in 1992.
> 31. The policy of lowering the age of workforce [sic] was implemented throughout the BBV group.
> 32. BBV preferred hiring workers 25 and under over hiring worker [sic] over 40.
> 33. BBV refused to send workers over 40 for training in the upper management.

Dkt. No. 39. While these factual allegations would otherwise be sufficient to support a finding of continuing systemic violation, Andreu provides no citations to the record for these allegations. In addition to her Statement of Contested Material Facts, Andreu submits a Contravention of Defendant's Statement of Purportedly Uncontested Material Facts, Dkt. No. 39. Even in this document, the Court finds only one allegation of age discrimination with any citation to the record. The allegation is as follows: "Mr. Net testified that transfers or merging of positions were [sic] used as a tactic to reduce the number of older workers in the workforce." Dkt. No. 39. At the points in the record that Andreu cites, however, there is absolutely no support for this allegation. Further, in her Additional Material Controverted Facts, Dkt. No. 51, Andreu makes some specific references to the record, but the references fail to clarify matters. Andreu simply cites to certain exhibits, which appear to be deposition transcripts. These transcripts, however, fail to indicate who is the deponent and at best obliquely support Andreu's statements of fact. Andreu simply submits an inches-thick stack of pages of depositions with no indication of what these pages represent. Finally, Andreu at various points in her Brief in Support of

Motion in Opposition, Dkt. No. 39, makes some miscellaneous allegations that also make no reference to the record.

Often, parties before the District Court of Puerto Rico overlook the importance of the anti-ferret rule in the summary judgment stage: Local Rule 311(12). See *Dominguez v. Eli Lilly and Co.*, 958 F.Supp. 721, 727 (D.P.R. 1997) (containing a lengthy discussion by this Court of the anti-ferret rule and its purposes, from which this opinion draws heavily), *aff'd*, 141 F.3d 1149 (1st Cir. 1998). Without such a rule, the Court would have to search through the record, with or without the assistance of counsel, for lurking evidence of a genuine issue of material fact. *Stepanischen v. Merchants Despatch Transport Corp.*, 722 F.2d 922, 920-31 (1st Cir. 1983). Local Rule 311(12) prevents "the recurrent problem of 'ferreting through the record'" and "the specter of district judges being unfairly sandbagged by unadvertised factual issues." *Id.* at 931. It requires the party moving for summary judgment to file a separate, short, and concise statement of material facts that supports its claim that there is no genuine issue of material fact in dispute. These facts are deemed admitted unless the non-moving party files a similarly separate, short, and concise statement of material facts demonstrating that there is a genuine issue in dispute.

The anti-ferret rule serves the purpose of laying out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions. The rule requires both the moving party and the non-moving party to properly support their respective lists of material facts with specific references to the record. Without specific references to the record, the list of uncontested and contested

Civil No. 98-1995 (HL)                                            12

facts does not serve its purpose. The Court would have to continue to ferret through the record, read all the answers to the interrogatories, study all the attached documents, and carefully scrutinize all the depositions for lurking genuine issues of material facts. *Stepanischen* warns parties, however, that the failure to make specific references to the record "would, where appropriate, be grounds for judgment against the party." *Id.* "The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, *properly supported by specific reference to the record.*" Local Rule 311(12) (emphasis added).

Because Andreu has failed to comply with Local Rule 311(12), she has failed to adduce sufficient evidence in the record to create a genuine issue of material fact as to BBV's alleged policy of age discrimination. Thus, Andreu has not only failed to meet the requirements of demonstrating a continuing systemic violation, but she has also failed to create a genuine issue of material fact on the issue of the existence of age discrimination against her.

As for Andreu's COBRA and ERISA claims, Andreu fails to create a genuine issue of material fact as to her allegation that BBV failed to give her COBRA notice and denied her COBRA coverage. In its Brief in Support of Defendant's Motion for Summary Judgment and its Statement of Uncontested Material Facts, Dkt. No. 37, BBV argues that BBV gave Andreu COBRA notice and benefits. In Andreu's Contravention of Defendant's Statement of Purportedly Uncontested Material Facts, Dkt. No. 39, Andreu

Civil No. 98-1995 (HL)                    13

admits this. Andreu's only contention is that she received her COBRA notice late. In BBV's Reply Brief, Dkt. No. 46, BBV contends that notice was in fact timely. Andreu failed to file a sur-reply setting forth any evidence to suggest that she received late notice under COBRA. Without any evidence on this matter, Andreu has failed to create a genuine issue of material fact.

Wherefore, Andreu's retaliation, disability discrimination, and age discrimination claims are hereby dismissed with prejudice. Judgment shall be entered accordingly.

Lastly, Andreu has also brought local law claims pursuant to P.R. LAWS ANN. tit. 29, § 146 (1995) ("Law 100"); P.R. LAWS ANN. tit. 1, § 501 (1982) ("Law 44"); P.R. LAWS ANN. tit. 29, § 1321 (1995) ("Law 69"); P.R. LAWS ANN. tit. 11, § 201 et seq. (1997) ("Law 139"). The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed. *Id.*; *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *Soto v. Carrasquillo*, 878 F.Supp. 324, 332 (D.P.R. 1995), *aff'd sub nom. Soto v. Flores*, 103 F.3d 1056 (1st Cir. 1997). Because the Court has dismissed Andreu's Title VII, ADEA, and ADA claims, the Court hereby dismisses without prejudice her Puerto Rico law claims. Judgment shall be entered accordingly.

Civil No. 98-1995 (HL) 14

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 3, 2000.

HECTOR M. LAFFITTE
Chief U.S. District Judge